UNITED STATES DISTRICT COURT

for the

Northern _____ District of New York

_____ Division

## COMPLAINT FOR VIOLATION(S) OF CIVIL RIGHTS

Case No. _____

Davide G. Coggins
_____
Nagmeldeen Azaz
_____
Larry Powell
_____
Gregory Jones
_____
Benjamin Lanzot
_____
Isaac Leao
_____
All Like Persons
      Plaintiff(s)

-v-

Anthony J. Annucci
_____
Montegari
_____
Thomas
_____
Michaels
_____
Otto
_____

_____
    Defendant(s)

9:23-w-1153

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
SEP - 8 2023
AT _____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

[X] Prisoner Complaint
[X] Forma Pauperis Application

## THE PLAINTIFF(S)

| | |
|---|---|
| NAME | Davide G. Coggins |
| ID NUMBER | 15B0759 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Nagmeldeen Azaz |
| ID NUMBER | 04A5731 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Larry Powell |
| ID NUMBER | 22B3460 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Gregory Jones |
| ID NUMBER | 16A3137 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Benjamin Lanzot |
| ID NUMBER | 17A2206 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Isaac Leao |
| ID NUMBER | 00A3623 |
| CURRENT INSTITUTION | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

## THE DEFENDANT(S)

| | |
|---|---|
| NAME | Anthony J. Annucci |
| JOB/TITLE | Acting Commissioner of NYS DOCCS |
| EMPLOYER | New York State Department of Corrections and Comm. Spvn |
| ADDRESS | 1220 Washington Ave., Bldg. #2 |
| | Albany, New York  12226-2050 |

| | |
|---|---|
| NAME | Montegari |
| JOB/TITLE | Facility Superintendent |
| EMPLOYER | New York State Department of Corrections and Comm. Spvn |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Thomas |
| JOB/TITLE | Deputy Superintendent of Security |
| EMPLOYER | New York State Department of Corrections and Comm. Spvn |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Michaels |
| JOB/TITLE | Administrative Lieutenant |
| EMPLOYER | New York State Department of Corrections and Comm. Spvn |
| ADDRESS | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | Otto |
| JOB/TITLE | Lieutenant |
| EMPLOYER | New York State Department of Corrections and Comm. Spvn |
| ADDRESS | 6514 Rt. 26. P.O. Box 8450 |
| | Rome, New York  13442 |

| | |
|---|---|
| NAME | |
| JOB/TITLE | |
| EMPLOYER | |
| ADDRESS | |

ACTIONS AGAINST THE DEFENDANT(S) ARE BROUGHT:

NAME                    Anthony J. Annucci

    [X] Individual Capacity          [X] Official Capacity


NAME                    Montegari

    [X] Individual Capacity          [X] Official Capacity


NAME                    Thomas

    [X] Individual Capacity          [X] Official Capacity


NAME                    Michaels

    [X] Individual Capacity          [X] Official Capacity


NAME                    Otto

    [X] Individual Capacity          [X] Official Capacity


NAME

    [] Individual Capacity          [] Official Capacity


PRISONER STATUS

[] Pretrial Detainee
[] Civilly Committed Detainee
[X] Convicted and Sentenced State Prisoner
[] Convicted and Sentenced Federal Prisoner
[] Other (explain)

TYPE OF ACTION

[] Individual Claim
[X] Class Action


BASIS FOR JURISDICTION

This action is being taken under 42 U.S.C. § 1983.

Under 42 U.S.C. Section 1983, you may sue State or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." What federal constitutional or statutory right(s) do you claim is/are being violated by State or local officials?

| |
|---|
| The right to be free from cruel and unusual punishment. |
| The right to due process. |
| NY Correction Law § 137 and 7 NYCRR. |
| The Equal Protection Clause and the right to be free from discrimination. |

Under 42 U.S.C. Section 1983, defendants may be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." Explain how each defendant acted under color of State or local law. Commissioner Annucci failed to address and remedy these legal violations, failed to properly conduct oversight of the policies and procedures being implemented in NYS DOCCS facilities, etc. The remaining defendants were at all times able and capable of addressing and remedying the violations named herein and remained deliberately indifferent to the rights of those under their charge. They were each made aware of these claimed violations and took no action to remedy such. Oftentimes, these defendants were themselves the cause of the claimed violations.

STATEMENT OF CLAIM

Describe as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongdoing, along with the dates and locations of relevant events.

If the events giving rise to your claim arose outside of an institution/prison, describe where and when they arose.

_____

_____

_____

_____

If the events giving rise to your claim arose within an institution/prison, describe where and when they arose.

Each case arose while being housed in Walsh Regional Medical Unit.

The specific dates and times vary as this is a class action and only discovery will be able to retrieve the documented information which would list specific dates and times of the claimed for disciplinary sanctions.

_____

What are the underlying facts of your claim?

1. The Plaintiffs have all suffered the results of inappropriately issued misbehavior reports and the sanctions derived therefrom. They have been sanctioned to segregated/solitary confinement, as well as other sanctions, far beyond the limits allowed by law. The defendants refuse to acknowledge New York State laws prohibiting such actions, refuse to process disciplinary appeals addressing such, and continue to act with blatant disregard for plaintiffs' Constitutional rights.

_____

_____

2. CORRECTION LAW, Chapter 43, Article 6, § 138, paragraph 7:    De-escalation, intervention, informational reports and the withdrawal of incentives shall be the preferred methods of responding to misbehavior unless the department determines that non-disciplinary interventions have failed, or that non-disciplinary interventions would not succeed and the misbehavior involved an act listed in subparagraph (ii) of paragraph (k) of subdivision six of section one hundred thirty-seven of this article, in which case, as a last resort, the department shall have the authority to issue misbehavior reports, pursue disciplinary charges, or impose new or additional segregated confinement sanctions.

3. CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(ii):    The department may place a person in segregated confinement beyond the limits of subparagraph (i) of this paragraph or in a residential rehabilitation unit only if, pursuant to an evidentiary hearing, it determines by written decision that the person committed one of the following acts and if the commissioner or his or her designee determines in writing based on specific objective criteria the acts were so heinous or destructive that placement of the individual in general population housing creates a significant risk of imminent serious injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility:

4. (A) causing or attempting to cause serious physical injury or death to another person or making an imminent threat of such physical injury or death if the person has a history of causing such physical injury or death and the commissioner and, when appropriate, the commissioner of mental health or their designee reasonably determines that there is a strong likelihood that the person will carry out such threat. The commissioner of mental health or his or her designee shall be involved in such determination if the person is or has been on the mental health caseload or appears to require psychiatric attention. The department and the office of mental health shall promulgate rules and regulations pertaining to this clause;
(B) compelling or attempting to compel another person, by force or threat of force, to engage in a sexual act;
(C) extorting another, by force or threat of force, for property or money;

(D) coercing another, by force or threat of force, to violate any rule;

(E) leading, organizing, inciting, or attempting to cause a riot, insurrection, or other similarly serious disturbance that results in taking of a hostage, major property damage, or harm to another person;

(F) procuring deadly weapons or other dangerous contraband that poses a serious threat to the security of the institution; or

(G) escaping, attempting to escape or facilitating an escape from a facility or escaping or attempting to escape while under supervision outside such facility.

5. For the purposes of this section, attempting to cause a serious disturbance or to escape shall only be determined to have occurred if there is a clear finding that the (I/I) had the intent to cause a serious disturbance or the intent to escape and had completed significant acts in the advancement of the attempt to create a serious disturbance or escape. Evidence of withdrawal or abandonment of a plan to cause a serious disturbance or to escape shall negate a finding of intent.

6. SEGREGATED CONFINEMENT:    Correction Law, Section 2, subdivision 23 -Segregated Confinement is defined as the confinement of an incarcerated individual in any form of cell confinement, (or room/cube), for more than 17 hours a day other than in a facility-wide emergency or for the purpose of providing medical or mental health treatment. Cell confinement that is implemented due to medical or mental health treatment shall be within a clinical area in the correctional facility or in as close proximity to a medical or mental health unit as possible.

7. CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(i) - The department may place a person in segregated confinement for up to three consecutive days and no longer than six days in any thirty day period if, pursuant to an evidentiary hearing, it determines that the person violated department rules which permit a penalty of segregated confinement. The department may not place a person in segregated confinement for longer than three consecutive days or six days total in a thirty day period unless the provisions of subparagraph (ii) of this paragraph are met. (see CORRECTION

LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(ii) as listed above.)

8. CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (j)(ii) - Persons in segregated confinement shall be offered out-of-cell congregate programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell programming, services, treatment, and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility.

9. Loss of Recreation, which forces I/Is to remain in their cell/room for 23 or more hours each day, is unquestionably a form of Segregated Confinement. Despite the defendants being more than aware of the above stated facts, plaintiffs and countless like Incarcerated Individuals in Mohawk Correctional Facility and Walsh Regional Medical Unit have been placed under illegal sanctions in violation of the above named statutes/laws.

10. In an effort to circumvent and undermine legislative mandates and guidelines, this facility's Superintendent/staff and like persons, along with administrative persons within the Department of Corrections and Community Services, (NYSDOCCS), such as defendant Annucci, are deliberately and blatantly disregarding Correction Laws and the contents thereof.

11. Misbehavior reports are being written for subjects such as smoking in an undesignated area, disobeying a direct order, phone procedure violations, etc., all without an attempt at "non-disciplinary interventions". Attempts to appeal or object to this are suppressed and ignored, leaving the plaintiffs and all like persons without due process or the ability to avoid cruel and unusual punishment.

12. The reason for this action has been made clear to those incarcerated within the NYSDOCCS. Plaintiffs constantly hear NYSDOCCS staff bragging

about/discussing the goal of creating an atmosphere within the incarcerated population of extreme stress and high emotion in an effort to entice Incarcerated Individuals, (hereafter I/Is), into physical altercations and emotional explosiveness. The reason this is desired is to cause a rise in serious reportable disciplinary infractions so that Mohawk Correctional Facility, and the NYSDOCCS as a whole, is then able to report such a rise which may then trigger a reversal of all newly implemented laws which they do not support.

13. This malicious deed is accomplished through the tactic of having dozens/hundreds of I/Is, often through improper sanctions, living without personal property, recreation, phone/commissary/package privileges, etc., and keeping them in a high stress environment. When a person is forced to live like this for weeks or months they either become mentally unhinged, lash out in aggression, or seek emotional escape through intoxication/substance abuse. By housing groups of these type of individuals together, or among calm and otherwise sedentary I/Is, the number of altercations, conflicts and misbehaviors rise, giving superintendents and the NYSDOCCS grounds to report that there is an escalation in such incidents, showing grounds for a reversal of the very same mandates/laws which they refuse to adhere to, and are actively undermining.

14. This self-realizing scheme of regulatory mismanagement allows the defendants cause to attempt to seek the reversal of laws which they are openly refusing to follow. The fact that the NYSDOCCS has had ample time to prepare for the change in policy regarding disciplinary procedures, and has had ample time to adjust to new legal procedures, but still refuses to update its disciplinary directives relating to changes in policy and procedures it must adhere to post HALT Bill implementation, all the while having no difficulty updating other directives in this same timeline, proves the unwillingness of the NYSDOCCS to accept the new legal mandates. In fact, defendant Montegari has taken it upon himself to override standing directives and illegally implemented more restrictive disciplinary procedures concerning sanctions.

15. A review of the number of misbehavior reports written in the past three years will show the validity of the above claims. Misbehavior reports for what are

now inappropriate subjects have continued to be written and processed, I/Is are continuing to be found guilty of these inappropriate charges, and unjust sanctions are continuing to be given and enforced. In addition, many such charges are on the rise against all intended changes.

16. Just a small sample window of disciplinary charges and sanctions of a year or two pre and post Correction Law updates will show that the defendants, and NYSDOCCS as a whole, has acted with deliberate indifference to the well being of those under their authority. The deliberate and hostile actions of the defendants is unmistakable.

17. New York State legislative bodies passed laws to ensure the reduction of the number of frivolous and oppressive misbehavior reports. Facility operatives undermine this insightful action by continuing to write inappropriate misbehavior reports, failing to properly train their subordinates, failing to enforce Correction Laws, and by continuing to enforce unconstitutional and inappropriate disciplinary sanctions. When faced or confronted with these failures, facility leadership, hearing officers, and NYSDOCCS directors simply ignore the complaints/appeals filed which bring forth this subject, refusing to address this improper enforcement of broken laws, encouraging such nefarious behavior through this unhindered scheme. By this action, the frustration of I/Is and their feeling of helplessness increases until they grow callous to the exhaustion of administrative remedies and look to turn to more physical means of expressing their protestations. This in turn creates an unsafe and dangerous environment for all incarcerated persons.

18. When I/Is are being written inappropriate misbehavior reports, are being forced to endure unconstitutional disciplinary sanctions, and cannot even have their appeals heard, what results can be expected other than a lashing out and aggressive response? Since disciplinary sanctions/hearing are a non-grievable issue, even that outlet is denied to I/Is. Emotional and physical outbursts is the only result from such a system, especially when dealing with a population of individuals who are often uneducated and emotionally challenged.

19. The plaintiffs filing this action have each suffered inappropriate sanctions

and have been issued misbehavior reports which violate the above named
Correction Laws/mandates and/or have been placed in "segregated confinement"
or "solitary confinement" for far longer than is acceptable by standing legal
limitations. While in this predicament, they are also often denied personal
property, access to the general library/reading material, kiosk and tablets,
or other allowances stipulated in the HALT Bill and it progeny. Plaintiffs'
appeals have been ignored or "lost". Often, any complaints filed or
verbalized by the plaintiffs have resulted in retaliation and, in many cases,
additional improper misbehavior reports.

20. I/Is with mental health conditions, recognized and documented, are not given
consideration for their conditions during their disciplinary hearings and
subsequent sanctions, again violating Correction Law § 137, etc., leaving
them to suffer weeks/months under illegal segregated/solitary confinement
without appropriate care/oversight. Disciplinary hearings themselves have
become a farce, with evidence and declared legal violations being ignored or
not even being allowed to be presented at said hearings in the I/Is' defense.

21. The evidence is factual and incontrovertible. Correction Law § 138 clearly
names the condition by which incarcerated persons are to be treated when the
subject of responding to a misbehavior is at issue. The defendants are
unwilling to acknowledge this guideline/law and continue to encourage and
enforce sanctions resulting from misbehavior reports which should never even
be written.

22. This issue has been brought to the defendants' attention in a myriad of
avenues, verbally, in writing and through communications with external third
parties. Even legal agencies such as the Legal Aid Society and the Prisoner's
Legal Services have contacted the defendants and NYSDOCCS authorities to
address the above named concerns. Despite this, the defendants continue to
ignore legal mandates and move forward with their nefarious behaviors.

23. Now, in an attempt at silencing the plaintiffs, and like persons, preventing
them from seeking legal redress, the NYSDOCCS has updated the Package and
Articles Sent or Brought to Facilities Directive, # 4911, dated 05/08/2023,
making it no longer possible to purchase/receive typing paper despite

typewriters still being allowed. Since many I/Is have unlegible writing or physical barriers to writing by hand, this is a direct hindrance to their accessing the Courts. Since typing paper in no way presents a security risk, and even drawing paper/construction paper is allowed, there can be no other explanation for this rule change other than an additional effort being made to prevent I/Is from voicing their complaints and seeking legal redress.

24. In recent years the NYSDOCCS has made a concerted effort to reduce the few positive outlets available to incarcerated persons while increasing their oppressive behaviors. Leather work, an actual learnable skill usable in the "free world", as well as wood work, where I/Is are able to make clocks or items from popsicle stick and such, and oil paints have all been taken from them. Yarn, used for crochet projects, has been limited to 8 ounce skeins only, a size which costs I/Is more than larger units. Acrylic and water based paints are only allowed in 2 ounce tubes, a size that costs more than tubes/bottle containing 8 or 16 ounces, this despite the fact that I/Is are allowed food and hygiene items in 16 to 32 ounce containers.

25. Even the few musical items I/Is are allowed have been restricted to the point of making them obsolete. Keyboards are not allowed with most sounds that all keyboards come equipped with, even the cheapest dollar store children's versions, so now there are virtually no keyboards in existence in NYSDOCCS any longer. Guitars are allowed, but the hard protective cases no longer are, which results in the guitars being broken/damaged every time an I/I is moved or transferred, thus causing I/Is to refrain from buying such.

26. Even the making of cards and papercraft has now been hindered with the removal of children's, blunt edged small scissors from allowed items. This change results in I/Is either not being able to cut paper to create their artwork/cards, or it forces them to utilize contraband to do so. The limitations and reductions of the few positive items Incarcerated Individuals are/were allowed, the few items which allowed them to focus on positive subjects instead of the negative aspects of prison, these are all being taken away or made difficult to utilize.

27. Music and art are well known avenues for psychological peace and growth.

Hindering these outlets, while increasing the stress I/Is live under, is undoubtably cruel and unusual punishment which would offend the conscious and sensibilities of society as a whole.

28. By creating and encouraging this form of hostile and oppressive environment the defendants and their colleagues have been deliberately indifferent to the plaintiffs' well-being, violating NYSDOCCS Policies and Goals, placing the plaintiffs in dangerous and unnecessarily stressful conditions without due process of, or even access to, administrative, and thereby legal, remedies/redress. Their failure to protect those under their care and custody, their disregard of Constitutional and legal precedent, show cause why this action is necessary to overcome such.

## INJURIES

If you sustained injuries related to the events alleged above, describe your injuries and state what medical/other treatment, if any, you required and did or did not receive.

The emotional and physical suffering of unconstitutional treatment under atypical conditions. The effects of such are both temporary and lasting, varying in degree by situation and case.

## RELIEF

State briefly what you want the Court to do for you. Make no legal arguments. Do not site any cases or statutes. If seeking monetary damages, include the amounts of any actual damages and/or punitive damages claimed for the above alleged acts. Explain the basis for these claims.

1. For all illegally implemented Segregated Confinement to be stopped and for the current Commissioner of NYS DOCCS to guide/ ensure/oversee such.

2. $150 Compensatory, $150 Punitive damages per day for every I/I in Mohawk/Walsh who suffered said Segregated Confinement.

3. $75 Compensatory, $75 Punitive damages per day for every I/I in Mohawk/Walsh who suffered other forms of sanctions for misbehavior reports which were issued/sanctioned in violation of NY Correction Law.

4. For misbehavior reports/sanctions to be issued according to NY Corr. Law.

5. $1000 to lead plaintiff for return of fees, costs, etc., in processing this action.

CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

| | |
|---|---|
| Name | Davide G. Coggins |
| Signature | |
| ID Number | 15B0759 |
| Current Institution | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| Address | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |
| Name of Proxy Plaintiff | N/A |
| Date of Signing | July 17, 2023 |

Name                          Nagmeldeen Azaz

Signature
ID Number                     04A5731
Current Institution           Mohawk Corr. Fac./Walsh Reg. Med. Unit
Address                       6514 Rt. 26, P.O. Box 8450
                              Rome, New York  13442
Name of Proxy Plaintiff       Davide Coggins
Date of Signing               July 19, 2023


Name                          Larry Powell

Signature
ID Number                     22B3460
Current Institution           Mohawk Corr. Fac./Walsh Reg. Med. Unit
Address                       6514 Rt. 26, P.O. Box 8450
                              Rome, New York  13442
Name of Proxy Plaintiff       Davide Coggins
Date of Signing               July 19, 2023


Name                          Gregory Jones

Signature
ID Number                     16A3137
Current Institution           Mohawk Corr. Fac./Walsh Reg. Med. Unit
Address                       6514 Rt. 26, P.O. Box 8450
                              Rome, New York  13442
Name of Proxy Plaintiff       Davide Coggins
Date of Signing               July 24, 2023

| | |
|---|---|
| Name | Benjamin Lanzot |
| Signature | |
| ID Number | 17A2206 |
| Current Institution | Mohawk Corr. Fac./Walsh Reg. Med. Unit |
| Address | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |
| Name of Proxy Plaintiff | Davide Coggins |
| Date of Signing | July 24, 2023 |

| | |
|---|---|
| Name | Isaac Leao |
| Signature | Isaac Leao |
| ID Number | 00A3623 |
| Current Institution | Mohaw Corr. Fac./Walsh Reg. Med. Unit |
| Address | 6514 Rt. 26, P.O. Box 8450 |
| | Rome, New York  13442 |
| Name of Proxy Plaintiff | Davide Coggins |
| Date of Signing | July 24, 2023 |

| | |
|---|---|
| Name | All Like Situated Persons |
| Signature | |
| ID Number | |
| Current Institution | |
| Address | |
| Name of Proxy Plaintiff | |
| Date of Signing | |

**Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

[X] Yes

[ ] No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Walsh Regional Medical Unit/Mohawk Corr. Facility

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

[X] Yes        It is not actually available to Walsh I/Is.
               An Article 78 is in Court now challenging this.

[ ] No

[ ] Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

[ ] Yes

[X] No

[ ] Do not know

If yes, which claim(s)?

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X] Yes

[ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[ ] Yes

[ ] No

E.  If you did file a grievance:

1.  Where did you file the grievance?

In Walsh RMU.

2.  What did you claim in your grievance?

A violation of NY Correction Law, section 137, related to Segregated Confinement. Constitutional violations, etc.

3.  What was the result, if any?

We have been told that we cannot grieve this issue as it is not a grievable topic per 7 NYCRR 701.3(e) and the New York Commission of corrections minimum standards.

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

We have attempted to address this issue with each of the defendants. They have not responded to our letters or appeals.

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

The grievances were never processed due to administrative policy.

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

We filed disciplinary appeals, which were not processed, we wrote to the facility Superintendent, Deputy Superintendent of Security, the Administrative Lieutenant, and directly to Commissioner Annucci himself. There was no action taken.

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

By NYS DOCCS personnel making a deliberate attempt to silence this topic, all grievances and administrative avenues to exhaust possible outlets for remedies were sought and exhausted.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*    * Please note: Our rooms are searched and our documents are disposed of as "clutter", making it difficult to retain copies of our correspondences.

**Previous Lawsuits**

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No    Only an Art. 78 challenging access to IGRC and ILC.

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s) _____

    Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    _____

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case

    _____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition. _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

    This is the first action of this kind as far as we are aware of.

☐ Yes

☐ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
   Plaintiff(s) _____
   Defendant(s) _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

   _____

3.    Docket or index number

   _____

4.    Name of Judge assigned to your case

   _____

5.    Approximate date of filing lawsuit

   _____

6.    Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   _____

   _____

## EXHIBIT IDENTIFIER

Exhibit A: Sample letters sent to defendants concerning NY Correction Law violations.

Exhibit B: Sample Disciplinary Appeal ignored/rejected by defendants, (actually acknowledged in part).

Exhibit C: Sample letter sent to defendant Annucci addressing NY Correction Law violations.

Exhibit D: Denial notifications of why this topic was a non-grievable issue.

Exhibit E: Sample letter from external legal agency addressing the violations of Plaintiffs' rights.

EXHIBIT A

TO: Superintendent Montegari
FROM: Davide G. Coggins, 15B0759    52-C1-2B
DATE: March 6, 2023
SUBJECT: Unconstitutional Actions/Policies


Dear Superintendent;

I am writing to you concerning the illegal and unconstitutional actions taking place here in this facility. I refer to the writing of misbehavior reports and holding of disciplinary hearings/implementation of disciplinary sanctions in violation of New York State Correction Laws.

Enclosed you will find itemized sections of the Correction Law which this facility continues to violate by its personnel writing misbehavior reports which do not meet the criteria for such, and then the implementation of sanctions to enforce those inappropriate misbehavior reports.

"Loss of Recreation" is another form of Segregated Confinement and is being utilized to punish I/Is on a daily basis, often as a result of inappropriate misbehavior reports. The utilization of this confinement is a violation of I/I's constitutional right to due process and to be free from cruel and unusual punishment. Correction Law is clear on when such can be used and for how long it is allowed, both of which this facility is in daily violation of.

Prior to seeking external/legal remedies to these concerns, I am attempting to mitigate damages by allowing this facility's administration to cease and desist said actions. Already, there are dozens of I/Is who are willing and able to join in a Class Action to seek redress for the ongoing abuses of power and failures to properly oversee those under supervisory authority. However, the offer to mitigate damages must be made and a chance to remedy the deliberate indifference being shown needs to be offered. So saying, I am writing to you in hopes of accomplishing this and resolving these issues at hand.

Thank you for your time and possible intervention. I appreciate both.

Respectfully written,

Davide G, Coggins

cc:

DSS Thomas
Lieutenant Michaels
Lieutenant Otto
Sergeant Rautenstrauch
Prisoner's Legal Services

CORRECTION LAW, Chapter 43, Article 6, § 138, paragraph 7:    De-escalation, intervention, informational reports and the withdrawal of incentives shall be the preferred methods of responding to misbehavior unless the department determines that non-disciplinary interventions have failed, or that non-disciplinary interventions would not succeed and the misbehavior involved an act listed in subparagraph (ii) of paragraph (k) of subdivision six of section one hundred thirty-seven of this article, in which case, as a last resort, the department shall have the authority to issue misbehavior reports, pursue disciplinary charges, or impose new or additional segregated confinement sanctions.

CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(ii):    The department may place a person in segregated confinement beyond the limits of subparagraph (i) of this paragraph or in a residential rehabilitation unit only if, pursuant to an evidentiary hearing, it determines by written decision that the person committed one of the following acts and if the commissioner or his or her designee determines in writing based on specific objective criteria the acts were so heinous or destructive that placement of the individual in general population housing creates a significant risk of imminent serious injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility:

(A) causing or attempting to cause serious physical injury or death to another person or making an imminent threat of such physical injury or death if the person has a history of causing such physical injury or death and the commissioner and, when appropriate, the commissioner of mental health or their designee reasonably determines that there is a strong likelihood that the person will carry out such threat. The commissioner of mental health or his or her designee shall be involved in such determination if the person is or has been on the mental health caseload or appears to require psychiatric attention. The department and the office of mental health shall promulgate rules and regulations pertaining to this clause;

(B) compelling or attempting to compel another person, by force or threat of force, to engage in a sexual act;

(C) extorting another, by force or threat of force, for property or money;

(D) coercing another, by force or threat of force, to violate any rule;

(E) leading, organizing, inciting, or attempting to cause a riot, insurrection, or other similarly serious disturbance that results in taking of a hostage, major property damage, or harm to another person;

(F) procuring deadly weapons or other dangerous contraband that poses a serious threat to the security of the institution; or

(G) escaping, attempting to escape or facilitating an escape from a facility or escaping or attempting to escape while under supervision outside such facility.


For the purposes of this section, attempting to cause a serious disturbance or to escape shall only be determined to have occurred if there is a clear finding that the (I/I) had the intent to cause a serious disturbance or the intent to escape and had completed significant acts in the advancement of the attempt to create a serious disturbance or escape. Evidence of withdrawal or abandonment of a plan to cause a serious disturbance or to escape shall negate a finding of intent.


SEGREGATED CONFINEMENT:    Correction Law, Section 2, subdivision 23 -Segregated Confinement is defined as the confinement of an incarcerated individual in any form of cell confinement, (or room/cube), for more than 17 hours a day other than in a facility-wide emergency or for the purpose of providing medical or mental health treatment. Cell confinement that is implemented due to medical or mental health treatment shall be within a clinical area in the correctional facility or in as close proximity to a medical or mental health unit as possible.


CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(i) - The department may place a person in segregated confinement for up to three consecutive days and no longer than six days in any thirty day period if, pursuant to an evidentiary hearing, it determines that the person violated department rules which permit a penalty of segregated confinement. The department may not place a person in segregated confinement for longer than three consecutive days or six days total in a thirty day period unless the provisions of subparagraph (ii) of this paragraph are met. (see CORRECTION

LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (k)(ii) as listed above.)

CORRECTION LAW, Chapter 43, Article 6, § 137, subdivision six, paragraph (j)(ii) - Persons in segregated confinement shall be offered out-of-cell programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell congregate programming, services, treatment, and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility.

Loss of Recreation is equivalent to Segregated Confinement.

EXHIBIT B

TO: Superintendent Montegari
FROM: Davide G. Coggins, 15B0759    52-C1-2B
Date: March 6, 2023
SUBJECT: Tier 2 Appeal

Today I was found guilty of a Tier 2, Rule 121.12, due to talking on the phone
to someone else's family while they were on the phone.

First, this is NOT a rule violation. Rule 121.12 states "An inmate shall
comply with and follow guidelines and instructions by the staff regarding
facility telephone programs pursuant to the requirements of Directive No. 4423
(7 NYCRR Part 723)." At no time was any part or portion of Directive 4423
violated, as there is no portion of said Directive that makes speaking to
someone's family/etc. on their phone call a rule violation. Speaking on
another's phone call is NOT a violation of Directive 4423, and thus is not a
violation of rule 121.12.

Second, Correction Law, Chapter 43, Article 6, § 138, paragraph 7 makes it
clear that this sort of incident CANNOT result in a misbehavior report or a
disciplinary hearing. This sort of incident, even if it HAD been a rule
violation, could only result in "De-escalation, intervention, informal reports
and the withdrawal of incentives".

So saying, this report and its sanctions must be removed. For the hearing
officer to ignore these laws, to blatantly act in a prejudiced manner and
refuse to allow myself to present evidence and testimony, shows that this
hearing violates due process and the constitutional protections offered to
incarcerated persons.

Thank you for your time the review of this appeal.

cc:                                    Respectfully written,
file
                                       Davide G. Coggins

TO: Superintendent Montegari
FROM: Davide G. Coggins, 15B0759    52-C1-2B
DATE: March 23, 2023
SUBJECT: Tier Two Appeal Overdue

Dear Superintendent Montegari;

I am writing to you to humbly ask that you please send me a response to my
Tier II Appeal, dated March 5, 2023. Seeing as this answer must come within
15 days after the appeal, I would need your answer to take the appeal
further, if need be, and advance it to the next step. While I do not feel
this will be necessary, since the grounds of my appeal are firmly in my
favor, I still must exhaust my administrative remedies by receiving an answer
from you.

Thank you for your time and consideration.

cc:                                        Respectfully written,

    file

                                           Davide G. Coggins

# MOHAWK CORRECTIONAL FACILITY

# MEMORANDUM

**TO:**      Coggins, D.      15B0759      52-0C-02B

**FROM:**    N. Thomas, Deputy Superintendent for Security

**DATE:**    4/1//23

**RE:**      Response to Tier 2 appeal

---

The last appeal I received from you, I responded to on 2/11/23.
Regarding your most recent correspondence, received into my office dated 3/28/23, asking for a response to an appeal I never received. Your correspondence states in part that you submitted a Tier 2 appeal dated, 3/5/23. This is interesting as your hearing was not completed until 3/6/23, so I don't know how your alleged appeal could have been submitted before the hearing you are appealing was in fact completed. I believe you are lying to me. However, in the interest of fairness, I have reviewed your Tier 2 hearing completed on 3/6/23 and I affirm the hearing officer's decision with no change.
If you feel there is a specific issue that I may have overlooked during my review of your hearing, feel free to reply to me directly.

TO: N. Thomas, Deputy Superintendent for Security
FROM: Davide G. Coggins, 15B0759    52-G2-30A
DATE: April 7, 2023
SUBJECT: Response to 4/1/23 MEMORANDUM


Dear Deputy Superintendent Thomas;

First, I received your MEMORANDUM and subsequently obtained copies of the relevant documents to send to you.

Yes, you were correct, the hearing and appeal were done on March 6, 2023. I mistakenly placed the date of March 5th in my correspondence to the Superintendent. This does not mean I am lying to anyone, as your response stated, it just means I made a typing error.

As for my appeal, which I enclosed a copy of herein, the hearing violations and issues were clear in the recording of such. If you have already reviewed this and are still unwilling to address the inappropriate sanctions, then there is no need to continue to bring forth my issues at a facility level, as your mind is already decided.

To reiterate my issues, there was never any rule violation to have me found guilty of. Rule 121.12 concerns the following of any "guidelines and instructions by the staff regarding facility telephone programs pursuant to the requirements of Directive No. 4423". As the misbehavior reports clearly shows, no officer ever even spoke to me about the issue at hand. I was just given a misbehavior report. So, therefore, it is impossible that I violated this rule. Also, NOWHERE in Directive 4423 does is address or make it against NYSDOCCS policy to speak to someone on another person's phone call. So long as there is no exchange of PINs or the like, there is no violation of the Directive, again making it impossible that I violated Directive 4423 or the claimed rule.

In addition to these facts, Correction Law, Chapter 43, Article 6, § 138, paragraph 7, makes it clear that this sort of rule infraction cannot result

in a misbehavior report any longer. Instead, "de-escalation, intervention, informal reports and the withdrawal of incentives" is the response to such.

Lastly, the hearing officer prevented my being able to place my objections and evidence into the record, refused to acknowledge the laws and realities of these statements, and was not impartial.

Despite having already served the sanctions imposed by this hearing, I still would ask that it be removed/expunged from my record, as every report increases the likelihood of greater sanctions in the future.

Thank you for your time and possible consideration.

Respectfully written,

cc:

Davide G. Coggins

file

EXHIBIT C

Department of Corrections and Community Services
1220 Washington Ave., Bldg. 9
Albany, NY  12226
Anthony J. Annucci, Commissioner


Davide G. Coggins, 15B0759
Walsh Regional Medical Unit
6514 Rt. 26
P.O. Box 8450
Rome, NY  13442
March 28, 2023


Dear Commissioner Annucci;

I am writing to you as a last effort to remedy illegal and unconstitutional
actions occuring here within this facility.

I have enclosed copies of letters that I have written to our facility
Superintendent to show you that I have done all in my power to remedy these
concerns prior to writing to you. However, the Superintendent refuses to
acknowledge my communications or act upon them. He even refuses to process
Disciplinary Appeals in an effort to silence my statements of violations.

Enclosed you will see a listing of Correction Laws which are being violated
here on a daily basis. Disciplinary Hearings are blatantly ignoring the laws
pertaining to such. In addition, the sanctions imposed are far beyond that
which is allowed by Correction Law. This includes being held in our
cells/rooms for 23 or more hours a day, for weeks and months, extensive SHU
impositions far beyond that allowed, and the writing and advancing of
misbehavior reports which are no longer within the guidelines of those
authorized to be processed per Correction Law § 137.

The superintendent's refusal to address this issue, his deliberate
indifference in light of months of attempted correspondence, has left many of
us with no recourse other than to seek legal remedies. My letter to you today

is a last effort to find other means of redress prior to doing so.

Thank you for you time and possible assistance.

                                              Respectfully written,

cc:

     Superintendent Montegari
     file                              Davide G. Coggins

EXHIBIT D

Per the New York Commission of corrections minimum standards:
7032.4

   (h) Grievances regarding dispositions or sanctions from disciplinary
       hearings, administrative segregation housing decisions, issues that are
       outside the authority of the chief administrative officer to control, or
       complaints pertaining to an inmate other than the inmate actually filing
       the grievance are not grievable and may be returned to the inmate by the
       grievance coordinator. Such grievances may NOT be appealed to the
       chief administrative officer or the Citizen's Policy Complaint Review
       Council.

Prior to filing a grievance we encourage you to inform your Floor Officer of the issue. If you do file a grievance, you may not receive a response for several reasons.

In reference to grievances filed while in the Special Housing Unit or concerning disciplinary status, no grievance will be allowed to proceed as per the attached notice concerning minium standards 7032.4.

Medical is not under the authority of the chief administrative officer, nor is the Mental Health Unit. Therefore, grievances concerning either will not be allowed to proceed. These grievances must be taken up with the appropriate personnel.

Mail and packages are the domain of the delivery company and are non-grievable.

Instances of threats or actions by other inmates are non-grievable.

Any questions concerning grievances can be answered by the Grievance Officer. **DO NOT** bother your Floor Officer. If you do not like the answer you receive to your questions, **DO NOT** file a grievance. Staff decisions are non-grievable.

EXHIBIT E

**THE
LEGAL AID
SOCIETY
CRIMINAL
DEFENSE**

199 Water Street
New York, NY 10038
(212) 577-3300
www.legal-aid.org

Alan Levine
*President*

Twyla Carter
*Attorney-in-Chief*
*Chief Executive Officer*

Justine M. Luongo
*Attorney-in-Charge*
Criminal Practice

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project

**Via Electronic and First-Class Mail**

Anthony Rodriguez
Director, Office of Special Housing
New York State Department of Corrections and Community Supervision
1220 Washington Avenue, Building 9
Albany, NY 12226-2050
Anthony.Rodriguez@doccs.ny.gov

Dr. Carol Moores
Acting Chief Medical Officer
New York State Department of Corrections and Community Supervision
1220 Washington Avenue, Building 9
Albany, NY 12226-2050
carol.moores@doccs.ny.gov

Re:     **Benjamin Lanzot (17A2206)**

Dear Director Rodriguez and Dr. Moores:

I write regarding Mr. Benjamin Lanzot, DIN 17A2206. My office has grave concerns regarding the conditions in which Mr. Lanzot is currently held at the Mohawk Correctional Facility's RMU, as well as his need for immediate medical treatment.

Mr. Lanzot is 67 years old. He reports that he has had three strokes, which have caused paralysis on the left side of his body. He further reports that as a result of this paralysis, he often chokes when eating, cannot use the bathroom on his own, and requires the use of a leg brace. Mr. Lanzot further reports that he has severe PTSD as a result of his status as a military veteran. As explained in more detail below, neither Mr. Lanzot's housing situation nor his current medical treatment are appropriate for a person of his age with his disability and medical conditions, and we request that this be rectified immediately.

*Segregated Confinement*

Mr. Lanzot explains that in his current housing at the Mohawk Correctional Facility RMU, he is spending 24 hours per day in his cell, and has been denied access to out-of-cell recreation.

As you know, the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT") defines segregated confinement as "the confinement of an incarcerated individual in any form of cell confinement for more than seventeen hours a day other than in a facility-wide emergency or for the purpose of providing medical or mental health treatment." N.Y. Correct. Law § 2(23). Because Mr. Lanzot reportedly spends 24 hours per day in his cell and has been denied access to out-of-cell

**Justice in Every Borough.**

Please also ensure that Mr. Lanzot is seen by a medical provider as soon as possible with regard to his constant pain and reported injuries, and provided with effective treatment. Please also evaluate Mr. Lanzot for whether physical therapy would help with his conditions, as Mr. Lanzot reports he needs but has not been given access to such therapy.

We look forward to hearing from you regarding the resolution of these issues. Thank you for your time and consideration.

Sincerely,

*/s Katherine Haas*

Katherine Haas
*Staff Attorney*

**Justice in Every Borough.**

**THE
LEGAL AID
SOCIETY
CRIMINAL
DEFENSE**

199 Water Street
New York, NY 10038
(212) 577-3300
www.legal-aid.org

Alan Levine
*President*

Twyla Carter
*Attorney-in-Chief
Chief Executive Officer*

Justine M. Luongo
*Attorney-in-Charge*
Criminal Practice

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project

**<u>Via Electronic and First-Class Mail</u>**

Anthony Rodriguez
Director, Office of Special Housing
New York State Department of Corrections and Community Supervision
1220 Washington Avenue, Building 9
Albany, NY 12226-2050
Anthony.Rodriguez@doccs.ny.gov

Dr. Carol Moores
Acting Chief Medical Officer
New York State Department of Corrections and Community Supervision
1220 Washington Avenue, Building 9
Albany, NY 12226-2050
carol.moores@doccs.ny.gov

Re:    **<u>Benjamin Lanzot (17A2206)</u>**

Dear Director Rodriguez and Dr. Moores:

I write regarding Mr. Benjamin Lanzot, DIN 17A2206. My office has grave concerns regarding the conditions in which Mr. Lanzot is currently held at the Mohawk Correctional Facility's RMU, as well as his need for immediate medical treatment.

Mr. Lanzot is 67 years old. He reports that he has had three strokes, which have caused paralysis on the left side of his body. He further reports that as a result of this paralysis, he often chokes when eating, cannot use the bathroom on his own, and requires the use of a leg brace. Mr. Lanzot further reports that he has severe PTSD as a result of his status as a military veteran. As explained in more detail below, neither Mr. Lanzot's housing situation nor his current medical treatment are appropriate for a person of his age with his disability and medical conditions, and we request that this be rectified immediately.

*Segregated Confinement*

Mr. Lanzot explains that in his current housing at the Mohawk Correctional Facility RMU, he is spending 24 hours per day in his cell, and has been denied access to out-of-cell recreation.

As you know, the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT") defines segregated confinement as "the confinement of an incarcerated individual in any form of cell confinement for more than seventeen hours a day other than in a facility-wide emergency or for the purpose of providing medical or mental health treatment." N.Y. Correct. Law § 2(23). Because Mr. Lanzot reportedly spends 24 hours per day in his cell and has been denied access to out-of-cell

**Justice in Every Borough.**

recreation, he is currently held in segregated confinement for the purposes of HALT, regardless of which unit he resides in.

As you also know, HALT requires that people who are members of a "special population . . . shall not be placed in segregated confinement for any length of time, except in keeplock for a period prior to a disciplinary hearing." N.Y. Correct. Law § 137(6)(h). The term "special population" is defined to include "any person . . . fifty-five years of age or older" as well as any person with a disability as defined in Executive Law § 292(21). N.Y. Correct. Law § 2(33). Because Mr. Lanzot is 67 years old and reports that he is partially paralyzed, there can be no doubt that he is a member of a special population under HALT.

Because Mr. Lanzot is a member of a special population, it is a clear violation of HALT for him to be confined to his cell for more than seventeen hours per day. Nonetheless, Mr. Lanzot reports that he is currently experiencing those conditions. We request that Mr. Lanzot immediately be permitted to leave his cell for at least 7 hours per day, including for recreation and/or other programming.

_Medical Treatment and Disability Accommodations_

Mr. Lanzot reports that due to his medical conditions, he is not able to use the bathroom on his own, and frequently chokes when trying to eat. He explains that he has at times had a call button that allows him to request immediate assistance when these incidents occur, but that correctional staff frequently take away this call button, leaving him with no way to request assistance in an emergency. This has reportedly left him in serious danger, including during a recent incident in which he reportedly lost consciousness as a result of choking on his food. Mr. Lanzot also explains that because he is unable to dress himself to get ready for meal time, he has been denied access to meals. He also reports that he has insufficient access to toilet paper and soap.

In addition, Mr. Lanzot reports he is in excessive pain 24 hours per day in his shoulder, and also experiences pain in his neck and chest. He explains he has received x-rays for various injuries, but has not yet received any treatment as a result.

Please ensure that Mr. Lanzot is provided with appropriate accommodations to ensure his safety while eating and his ability to use the bathroom when needed, including but not limited to consistent access to a call button, as well as access to sufficient hygienic items such as toilet paper and soap. Please also ensure that Mr. Lanzot is provided with the necessary accommodations to ensure that he has access to regular meals. If appropriate accommodations cannot be provided at the Mohawk Correctional Facility RMU, we request that Mr. Lanzot be transferred to a facility and unit that can provide him with the services he needs. Please further ensure that Mr. Lanzot is afforded access to any mobility aids he may require, including a leg brace, particularly given that Mr. Lanzot reports that the Superintendent has approved his request for a leg brace.

**Justice in Every Borough.**

Please also ensure that Mr. Lanzot is seen by a medical provider as soon as possible with regard to his constant pain and reported injuries, and provided with effective treatment. Please also evaluate Mr. Lanzot for whether physical therapy would help with his conditions, as Mr. Lanzot reports he needs but has not been given access to such therapy.

We look forward to hearing from you regarding the resolution of these issues. Thank you for your time and consideration.

Sincerely,

*/s Katherine Haas*

Katherine Haas
*Staff Attorney*

**Justice in Every Borough.**

United States District Court
Northern District of New York
Federal Building
P.O. Box 7367
100 S. Clinton Street
Syracuse, New York  13261-7367
John Domurad, Clerk


Davide G. Coggins, 15B0759
Walsh Regional Medical Unit
6514 Rt. 26
P.O. Box 8540
Rome, New York  13442
September 3, 2023


Dear Court Clerk Domurad;

Enclosed is a 42 U.S.C. § 1983 motion. It is being filed as a class action.

Sir, the reason I address this letter to you is because of my ignorance in the
process of filing such an action and the extreme hardships we are facing in
the processing of such. I do not know the proper format or specific
documentation which is needed to bring a class action to your Court, yet
humbly beg that if I am failing in some aspect, I be allowed to address it.

Twice facility staff have "lost" the 1983 I sent to the prison Law Library to
be copied, along with many other documents. Now the officers are simply
refusing to copy/process my requests. Even obtaining typing paper is becoming
very difficult. The intimidation and harassment we are receiving is beyond
measure. I myself have recently been beaten bloody and worse in an effort to
silence my complaints. I state this to inform you as to why I will likely be
unable to obtain copies in this matter, despite a willingness to do so.

I do not know if a Poor Person's motion is needed for a Class Action, but I
included it. I must type all of my own documents as I am being denied anything

from facility staff so I do hope this format is acceptable. If not, I will make any necessary changes as you request.

Thank you for your time.

Respectfully written,

Davide G. Coggins

cc:

file

UCS-840
(rev. 11/24/2022)

# REQUEST FOR JUDICIAL INTERVENTION

_______________ COURT, COUNTY OF _______________

Index No: _______________ Date Index Issued: ____/____/________

**For Court Use Only:**
IAS Entry Date
Judge Assigned
RJI Filed Date

**CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Davide G. Coggins, Nagmeldeen Azaz, Larry Powell, Gregory Jones
Benjamin Lanzot, Isaac Leao, All Like Persons

Plaintiff(s)/Petitioner(s)

-against-

Anthony J. Annucci, Montegari, Thomas, Michaels, Otto

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING
Check only one box and specify where indicated.

**COMMERCIAL**

- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (*specify*): ____________________

***NOTE:*** *For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the* ***COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)****.*

**TORTS**

- ☐ Adult Survivors Act
- ☐ Asbestos
- ☐ Environmental (*specify*): ____________________
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (*specify*): ____________________
- ☐ Other Negligence (*specify*): ____________________
- ☐ Other Professional Malpractice (specify): ____________________
- ☐ Other Tort (specify): ____________________

**SPECIAL PROCEEDINGS**

- ☐ Child-Parent Security Act (*specify*): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 – Arbitration [see ***NOTE*** in **COMMERCIAL** section]
- ☐ CPLR Article 78 – Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 – Kendra's Law
- ☐ MHL Article 10 – Sex Offender Confinement (*specify*): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (*specify*): ____________________
- ☒ Other Special Proceeding (*specify*): 42 U.S.C. § 1983

**MATRIMONIAL**

- ☐ Contested

***NOTE:*** *If there are children under the age of 18, complete and attach the* ***MATRIMONIAL RJI ADDENDUM (UCS-840M)****.*
*For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (****UD-13****).*

**REAL PROPERTY** Specify how many properties the application includes: ______

- ☐ Condemnation
- ☐ Mortgage Foreclosure (*specify*): ☐ Residential ☐ Commercial
  Property Address: ____________________

***NOTE:*** *For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the* ***FORECLOSURE RJI ADDENDUM (UCS-840F)****.*

- ☐ Partition

***NOTE:*** *Complete and attach the* ***PARTITION RJI ADDENDUM (UCS-840P)****.*

- ☐ Tax Certiorari (*specify*): Section:________ Block:________ Lot:________
- ☐ Tax Foreclosure
- ☐ Other Real Property (*specify*): ____________________

**OTHER MATTERS**

- ☐ Certificate of Incorporation/Dissolution [see ***NOTE*** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (*specify*): ____________________

## STATUS OF ACTION OR PROCEEDING
Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☐ | If yes, date filed: ____/____/________ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☐ | If yes, date served: ____/____/________ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☐ | If yes, judgment date: ____/____/________ |

## NATURE OF JUDICIAL INTERVENTION
Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice — Date Issue Joined: ____/____/________
- ☐ Notice of Motion — Relief Requested: ____________________ Return Date: ____/____/________
- ☐ Notice of Petition — Relief Requested: ____________________ Return Date: ____/____/________
- ☐ Order to Show Cause — Relief Requested: ____________________ Return Date: ____/____/________
- ☐ Other Ex Parte Application — Relief Requested: ____________________
- ☐ Partition Settlement Conference
- ☒ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☒ Other (specify): Application for Appointment of Counsel

| RELATED CASES | List any related actions.  For Matrimonial cases, list any related criminal or Family Court cases.  If none, leave blank. | | | | |
|---|---|---|---|---|---|
| | If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | | |
| **Case Title** | **Index/Case Number** | **Court** | | **Judge (if assigned)** | **Relationship to instant case** |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. | | |
|---|---|---|---|---|
| | | If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | |

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☒ | Name: D. Coggins<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: N. Azaz<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: L. Powell<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: G. Jones<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: B. Lanzot<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: I. Leao<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☒ | Name: All Like Persons<br>Role(s): plaintiff | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☐ | Name: A. Annucci<br>Role(s): defendant | NYSDOCCS, 1220 Washinton Ave.<br>Albany, NY 12226 | ☐ YES   ☐ NO | |
| ☐ | Name: Montegari<br>Role(s): defendant | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☐ | Name: Thomas<br>Role(s): defendant | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☐ | Name: Michaels<br>Role(s): defendant | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☐ | Name: Otto<br>Role(s): defendant | Walsh R.M.U., P.O. Box 8450,<br>Rome, NY 13442 | ☐ YES   ☐ NO | |
| ☐ | Name:<br>Role(s): | | ☐ YES   ☐ NO | |
| ☐ | Name:<br>Role(s): | | ☐ YES   ☐ NO | |
| ☐ | Name:<br>Role(s): | | ☐ YES   ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: 9 / 3 / 23

_____
Attorney Registration Number

_Davide G. Coggins_ Signature
Davide G. Coggins
Print Name

Davide G. Coggins, 15B0759
**Mohawk Correctional Facility**
**6514 Rt. 26**
**P.O. Box 8450**
**Rome, NY 13442**



CERTIFIED MAIL

7016 1370 0000 9180 7024

 

MOHAWK | NEOPOST 09/05/2023
CORRECTIONAL | US POSTAGE $011.21
FACILITY | ZIP 13440 041M11469096



U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK

SEP 0 8 2023

RECEIVED

John Domurad, Clerk
United States District Court
Federal Building, P.O. Box 7367
100 S. Clinton Street
Syracuse, N.Y. 13261-7367

LEGAL MAIL